**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**MONROE DIVISION**

**JIMMY ANDREWS, ET AL**           **CIVIL ACTION NO. 3:65-cv-11297**
    **PLAINTIFF,**

**UNITED STATES OF AMERICA,**
    **PLAINTIFF-INTERVENOR,**

**VERSUS**          **JUDGE ROBERT G. JAMES**

**MONROE CITY SCHOOL BOARD, ET AL**
    **DEFENDANTS**      **MAG. JUDGE KAREN L. HAYES**

## MEMORANDUM IN SUPPORT OF MOTION
## FOR LEAVE TO INTERVENE

        Respectfully submitted,

        **BREITHAUPT, DUNN, DUBOS,**
        **SHAFTO & WOLLESON, LLC**
        1811 Tower Drive, Suite D
        P.O. Box 14106
        Monroe, Louisiana 71207
        Telephone: (318) 322-1202
        Facsimile: (318) 322-1984
        Email: swolleson@bddswlaw.com
             rwoodard@bddswlaw.com


        **BY**: /s/P. Scott Wolleson.
          P. Scott Wolleson (#22691) (T.A.)
          Russell A. Woodard, Jr. (#34163)

# **TABLE OF AUTHORITIES**

**CASES**

*Adams v. Baldwin County Board of Education of Baldwin County, Georgia*, 628 F.2d 895, 897 (5th Cir.1980) .................................................................................................. 10
*Calhoun v. Cook*, 487 F.2d 680, 684 (5th Cir.1973) ................................................................ 10
*Dayton Bd. of Education v. Brinkman*, 433 U.S. 406, 410, 97 S.Ct. 2766, 2770, 53 L.Ed.2d 851 (1977) ............................................................................................................... 8
*Doe v. Glickman*, 256 F.3d 371, 375 (5th Cir.2001))*Freeman v. Pitts*, 503 U.S. 467, 490, 112 S. Ct. 1430, 1445, 118 L. Ed. 2d 108 (1992) .......................................................... 7
*Graham v. Evangeline Parish School Board*, 132 F. App'x 507, 511 (5th Cir. 2005) .................... 7
*Green v. Cty. Sch. Bd. of New Kent Cty., Va.*, 391 U.S. 430, 437-38, 88 S. Ct. 1689, 1694, 20 L. Ed. 2d 716 (1968) ............................................................................................... 11
*Guarjardo v. Estelle,* 71-H-570 (S.D. Tex. 7/14/1983), 568 F.Supp. 1354, 1356 ........................ 9
*Jones v. Caddo Parish School Board*, 499 F.2d 914, 917 (5th Cir.1974) .................................... 10
*Kneeland v. Nat'l Collegiate Athletic Ass'n.,* 806 F.2d 1285, 1288 (5th Cir.) ................................ 8
*Kneeland v. Nat'l Collegiate Athletic Ass'n.,* cert. denied, 484 U.S. 817, 108 S. Ct. 72, 98 L. Ed.2d 35 (1987 ................................................................................................................ 8
*Lee v. Macon County Board of Education*, 482 F.2d 1253, 1254 (5th Cir.1973) ......................... 10
*Lister v. Commissioners Court,* 566 F.2d 490, 493 (5th Cir. 1978) ............................................. 9
*Saldano v. Roach*, 363 F.3d 545, 551 (5th Cir.2004) ................................................................. 7
*United States v. CRUCIAL.,* 722 F.2d 1182, 1190 (5th Cir. 1983) ............................................. 10
*United States v. Franklin Parish School Board.,* 47 F.3d 755, 757 (5th Cir. 1995) ................. 7,10
*United States v. Perry County Board of Education*, 567 F.2d 277, 280 (5th Cir.1978) ............... 10
*Young v. Pierce,* P-80-8-CA (E.D. La. 7/3/1986), 640 F.Supp. 1476, 1477 ................................. 9

**OTHER AUTHORITIES**

INDEPENDENT, Black's Law Dictionary (10th ed. 2014) ........................................................... 4
Manual of Complex Litigation, Fourth Ed., Sec. 11.52 ................................................................ 8

MAY IT PLEASE THE COURT:

The Neville Alumni and Friends Association ("NAFA"), Greg Jones, and Nici Hanks move to intervene in this action as a matter of right under Rule 24(a)(2) of the Federal Rules of Civil Procedure for the following reasons:

## I. Introduction

NAFA is a non-profit corporation formed in 1995 whose mission is "to provide supplemental funding for programs or projects to enhance the quality of instructional delivery and student life, and to promote excellence in higher education at [Neville High School]."[1] Dwanye Ludley serves on the executive board of NAFA.[2] Greg Jones is the father of a student at Neville High School.[3] Nici Hanks is the mother of a student at Lee Junior High School and of a student at Sallie Humble Elementary School.[4]

Movants have a direct and substantial interest in the implementation of the consent decree throughout the District. Movants are interested in achieving good educational outcomes for all students in the District which can only be achieved by good faith cooperation and the assistance of competent, independent professionals. Movants also have a direct interest in course offerings and assignment of principals, teachers, and staff at schools throughout the District, including the above-mentioned schools.

Disposition of this case without this intervention will impair or impede the ability of movants to protect their interests in returning the District to local control.

## II. Movants Demonstrate an Adequate Factual Basis for Intervention

---

[1] *See* http://neville.mcschools.net/alumni_news/neville_alumni_and_friends_association
[2] Declaration of D. Ludley, attached as Exhibit 1.
[3] Declaration of G. Jones, attached as Exhibit 2.
[4] Declaration of N. Hanks, attached as Exhibit 3.

Movants seek to intervene on an expedited basis in order to challenge the deficient implementation of the December 2015 consent decree by the existing parties to this action, the Monroe City School Board ("MCSB") and the United States. While the MCSB and the United States are presumed, as a matter of law, to adequately represent the students in the Monroe City School District ("the District"), recent events related to the nomination of a court monitor establish that movants are not adequately represented by the existing parties.

The facts outlined in the declarations of MCSB members Bill Willson,[5] Jennifer Haneline,[6] and Vickie Dayton,[7] establish nonfeasance and bad faith on the part of the MCSB and, potentially, collusion between certain MCSB members and the United States with respect to the appointment of a court monitor. According to the declarations, the MCSB president and vice president have thwarted the goal of unitary status by:

> Discouraging certain MCSB members from attending the September 2015 hearing on Consideration of Unitary Status;
>
> Failing to adequately inform all MCSB members of the September 2015 ruling on unitary status;
>
> Refusing to include all MCSB members in the negotiation process leading up to the adoption of the December 2015 Consent Decree;
>
> Refusing to engage all MCSB members in the process to select the Independent Court Monitor required under the December 2015 Consent Decree;
>
> Soliciting the votes of MCSB members Berry and Johnson to adopt a resolution to appoint Educational Planning Group ("EPG") as the Court Monitor without any prior discussion of the group with other members;

---

[5] Declaration of B. Willson, attached as Exhibit 4.
[6] Declaration of J. Haneline, attached as Exhibit 5.
[7] Declaration of V. Dayton, attached as Exhibit 6.

> Introducing EPG to the United States with neither notice to, nor input from, other MCSB members, all prior to an MCSB vote to select the group as the board's choice of court monitor;
>
> Attempting to place on the agenda during the board's December 15, 2015 meeting a resolution selecting EPG as court monitor without providing information about the group to all MCSB members; and
>
> Failing to disclose the connection between M3A Architecture and EPG.

The United States was either complicit in the actions of the MSCB or, through nonfeasance of duty, ignorant of MSCB's backroom tactics to select EPG as the Independent Court Monitor.

Due to the well-publicized dispute between MCSB members emanating from the above-referenced actions of MCSB, the existing parties failed to select a court monitor within the time initially required by Section (V)(B) of the December 2015 consent decree, thus necessitating an extension of time. Not until January 21, 2016 did the existing parties file a Joint Status Report indicating MCSB had selected EPG as its selection of court monitor. Apparently, the United States consents, but appears to hedge by not affirmatively selecting any court monitor.[8]

Movants respectfully object to MCSB's nomination of EPG for two main reasons: (i) EPG is inexperienced and unqualified; and (ii) EPG is biased and lacks the objectivity required of an independent court monitor.

EPG is a Mississippi-based company which has never served as an independent court monitor under any desegregation order. According to the Mississippi Secretary of State Corporations Database, EPG had been dissolved until it was reactivated on December 14, 2016, the day before the MCSB vice president moved to place their

---

[8] There is legitimate doubt as to whether the existing parties have even made a selection. According to the Joint Status Report, it appears that the United States simply deferred to the selection made by the school board, which is indicative of collusion and nonfeasance.

5

nomination on the agenda without notice. According the Louisiana Secretary of State Corporations Database, EPG was not even authorized to conduct business in the State of Louisiana until January 7, 2016.

Additionally, EPG's owner, William McElroy, is currently in a contractual, for-profit business relationship with MCSB through his architectural firm, M3A Architecture. Specifically, William McElroy is an owner of M3A and is the architect in charge of ongoing projects in the District in which his estimated fees will exceed $1.5 million.

Certainly, William McElroy's vested business interest with MCSB puts EPG in a place of questionable objectivity and neutrality vis-à-vis the parties in these proceedings. Upon information and belief, McElroy and EPG may also have a personal relationship with the MCSB vice president.

This court specifically ordered the nomination of an "independent" court monitor. According to Black's Law Dictionary, "independent" describes someone who is "not influenced or controlled by others in matters of opinion, conduct, or…business."[9] Simply stated, EPG lacks the requisite independence to serve as court monitor.

Through its nomination of EPG, MCSB is asking this court to appoint a court monitor who is neither independent nor qualified. The failure to select a qualified and independent court monitor will impair the implementation of the consent decree and thereby impede the District's path to unitary status.

Compounding these shortcomings with the nomination of EPG, the MCSB president unilaterally appointed the board vice president as the sole liaison to the court monitor, with the apparent consent of the United States. This unilateral appointment violates Section (V)(B) of the consent decree by limiting the authority of other board

---

[9] INDEPENDENT, Black's Law Dictionary (10th ed. 2014).

6

members to assist the court monitor and "to ensure that the [court monitor] has the appropriate information" needed to implement the consent decree. Movants have a direct and substantial interest in maintaining the power of their representative MCSB board members to participate in the implementation of the consent decree impartially and appropriately throughout the District.

As a court appointed expert/special master, the court monitor should not be subject to undue influence by a single board member. Also, by appointing the board vice president as the liaison to the court monitor, MCSB has made the vice president the *de facto* superintendent. This liaison position was not authorized by the consent decree and improperly marginalizes the District Superintendent, which will further impede and impair the implementation of the consent decree.[10]

Upon information and belief, the District Superintendent had already developed a plan ("the Superintendent's Plan") with the assistance of Dr. William Gordon, a consultant hired by MCSB, to rectify the deficiencies specified in the consent decree, including, but not limited to the following: equal course offerings; teacher, principal and staff assignment; medical magnet; gifted and talented programs; and related policy implementations.

The Superintendent's Plan also included an ideal partnership with the University of Louisiana at Monroe to not only serve as court monitor (at a reduced cost to taxpayers) but also to assist the District in implementing the consent decree and achieving unitary status. This partnership with the university would provide a framework for collaboration between the District and the university to provide equal course offerings and programs

---

[10] Incidentally, the board vice president was a semifinalist for the superintendent position in 2013, losing to the current superintendent. The vice president still desires the position.

throughout the District. The university partnership would also provide teacher/aid support on a continuing basis and avail the District of resources not available through EPG.[11] The University of Louisiana at Monroe has enormous resources, both tangible and intangible, which could be incredibly beneficial to the District.

Unfortunately, with the apparent consent of the United States, MCSB members in control of a majority vote have chosen EPG rather than the Superintendent's Plan. It is doubtful, at best, that EGP will assist the court in achieving a declaration of unitary status in the District by the court's deadline of September 2017.

The recent events surrounding the nomination of EPG make crystal clear the conclusion that the interests of movants may not be adequately represented by MCSB and the United States. Accordingly, intervention is necessary and proper.

### III. Movants Are Entitled to Intervene as of Right

The legal principles governing intervention in desegregation cases are well-settled. "[T]he proper procedural remedy for parental groups challenging deficiencies in the implementation of desegregation orders is intervention."[12]

"Pursuant to Rule 24(a)(2), a movant may intervene as of right when: (1) the motion to intervene is timely; (2) the movant has an interest related to the transaction that forms the basis of the controversy in the case; (3) the disposition of the case has the potential to impair or impede the movant's ability to protect its interest; and (4) the existing parties do not adequately represent the movant's interest."[13]

---

[11] The University of Louisiana Monroe has already publicly declined to partner with EPG.
[12] *United States v. Franklin Par. Sch. Bd.*, 47 F.3d 755, 757 (5th Cir. 1995) (internal citations omitted).
[13] *Graham v. Evangeline Par. Sch. Bd.*, 132 F. App'x 507, 511 (5th Cir. 2005)(Emphasis added) citing *Saldano v. Roach*, 363 F.3d 545, 551 (5th Cir.2004) and *Doe v. Glickman*, 256 F.3d 371, 375 (5th Cir.2001)).

The Fifth Circuit has held that "an 'interest' for Rule 24(a)(2) purposes must be "direct, substantial, [and] legally protectable ...[,] one which the substantive law recognizes as belonging to or being owned by the applicant."[14] "[T]he parental interest which justifies intervention [in a desegregation case] is an interest in achieving a desegregated school system."[15]

As to the fourth prong, an intervenor need only show that "the representation of his interest by the existing parties 'may be' inadequate."[16] "When the 'party seeking to intervene has the same ultimate objective as a party to the suit, the existing party is presumed to adequately represent the party seeking to intervene unless that party demonstrates adversity of interest, collusion, or nonfeasance.'"[17] [18]

Movants clearly have a direct, substantial, and legally protected interest in immediately returning the Monroe City School system to local control. "Local autonomy of school districts is a vital national tradition." *Freeman v. Pitts*, 503 U.S. 467, 490, 112 S. Ct. 1430, 1445, 118 L. Ed. 2d 108 (1992), citing *Dayton Bd. of Education v. Brinkman*, 433 U.S. 406, 410, 97 S.Ct. 2766, 2770, 53 L.Ed.2d 851 (1977). The selection of EPG impedes the path to local autonomy and, as such, interferes with movant's protected interest in returning the District to local control.

---

[14] *Saldano*, 363 F.3d at 551 (internal citations omitted).
[15] *Id.*
[16] *Id*. at 553 (internal citations omitted)." *Graham v. Evangeline Par. Sch. Bd*., 132 F. App'x 507, 511 (5th Cir. 2005)(Emphasis added).
[17] *Kneeland v. Nat'l Collegiate Athletic Ass'n*, 806 F.2d 1285, 1288 (5th Cir.), cert. denied, 484 U.S. 817, 108 S.Ct. 72, 98 L.Ed.2d 35 (1987).
[18] The Fifth Circuit has recognized "a presumption that a school board adequately represents its student's interests absent a showing of gross negligence or bad faith."  This court has recently held that "[t]he United States is presumed to adequately represent Movants unless they can demonstrate adversity of interest, collusion, or nonfeasance."

### a. Selection of EPG Reveals Nonfeasance, Collusion, and Bad Faith

MSCB's actions surrounding the appointment of a court monitor have hampered, not hastened, the progress toward local control of the District. As this matter currently stands, there exists a strong likelihood of collusion and nonfeasance, making this intervention both necessary and proper.

EPG is not the solution this court seeks with the court monitor appointment. According to the Federal Judicial Center's *Manual of Complex Litigation*, Fourth Ed., Sec. 11.51, "[w]hen the court is selecting an expert witness for appointment, the best candidate is one whose fairness and expertise in the field cannot reasonably be questioned."[19] EPG fails in this regard.

Rule 53(a)(2) of the Federal Rules of Civil Procedure, governing the appointment of a special master, provides that someone in the position of an independent court monitor "must not have a relationship to the parties, counsel, action, or court that would require disqualification of a judge under 28 U.S.C. Sec. 455." Similarly, "a special master has the duties and obligations of a judicial officer."[20]

Undoubtedly, a judicial officer would feel compelled to recuse if he had a direct, for-profit relationship with a party to the proceedings. EPG should, therefore, not be allowed to fill a role which a judicial officer would not.

Movants respectfully contend a business relationship with at least one of the parties to these proceedings is not at all what this court contemplated when it ordered the

---

[19] "[T]he distinction between special masters under Federal Rule of Civil Procedure 53 and court-appointed experts under Federal Rule of Evidence 706 has become blurred in the context of appointments to serve in nonjury trial settings." *Manual of Complex Litigation*, Fourth Ed., Sec. 11.52.
[20] *Lister v. Commissioners Court*, 566 F.2d 490, 493 (5th Cir. 1978).

appointment of an "independent" court monitor. Indeed, EPG is neither qualified to serve as court monitor, nor independent.

Other district courts in the Fifth Circuit have recognized the importance of appointing an independent court monitor who had "served in the same capacity in other complex litigation" or who had substantial "experience organizing large amounts of information and working with both plaintiffs and defendants to develop a consensual approach to difficult problems."[21] Here, there is no evidence—beyond an unsubstantiated hope and prayer—that EPG possesses the skill or experience necessary to effectively implement this court's order.

### b. Movants are Entitled to an Evidentiary Hearing

"When parents [or parental groups] move to intervene in school desegregation cases, the important constitutional rights at stake demand a scrupulous regard for due process considerations."[22] "[T]he Fifth Circuit has] repeatedly made it clear that the district court's disposition of a proposed intervention must be "supported by findings based upon an adequate record."[23]

"In general, to the extent that the putative intervenors raise issues properly cognizable in a school case, and do so by submitting pleadings that conform to the guidelines established in *Hines*, *infra*, an evidentiary hearing should be held by the district court to aid its assessment of the proposed intervention.[24] "In *Hines v. Rapides*

---

[21] *Guarjardo v. Estelle*, 71-H-570 (S.D. Tex. 7/14/1983), 568 F.Supp. 1354, 1356; and *Young v. Pierce*, P-80-8-CA (E.D. La. 7/3/1986), 640 F.Supp. 1476, 1477.
[22] *Adams v. Baldwin County Board of Education of Baldwin County, Georgia*, 628 F.2d 895, 897 (5th Cir.1980).
[23] *Adams v. Baldwin County Board of Education*, supra; see also *United States v. Perry County Board of Education*, 567 F.2d 277, 280 (5th Cir.1978); *Jones v. Caddo Parish School Board*, 499 F.2d 914, 917 (5th Cir.1974); *Calhoun v. Cook*, 487 F.2d 680, 684 (5th Cir.1973); *Lee v. Macon County Board of Education*, 482 F.2d 1253, 1254 (5th Cir.1973).
[24] *Adams v. Baldwin County Board of Education*, supra.

*Parish School Board*, 479 F.2d 762, 765 (5th Cir.1973), [the Fifth Circuit] held that a petition for intervention in a school desegregation case should bring to the district court's attention the precise issues that the putative intervenors seek to represent, and the manner in which the challenged plan fails to realize the goal of a unitary system."[25]

The instant motion to intervene certainly "brings to the district court's attention the precise issues that the putative intervenors seek to represent, and the manner in which the challenged plan fails to realize the goal of a unitary system."[26] [27] Movants are entitled to a hearing to demonstrate to the court that the Superintendent's Plan and the proposed partnership with the University of Monroe, and not the appointment of EPG, is the proper course "to convert to a unitary system in which racial discrimination would be eliminated root and branch."[28]

This court's *sua sponte* consideration of whether the District had achieved unitary status resulted in a finding that MCSB failed to fully comply with the March 2010 consent decree. Implicit in the September 2015 ruling is the conclusion that the United States, whether through collusion or nonfeasance, failed to take appropriate action to force MCSB to comply with the 2010 Consent Order from 2010 through 2015. Recent actions of the board continue to impede a declaration of unitary status, all with the apparent consent of the United States.

---

[25] *United States v. CRUCIAL*, 722 F.2d 1182, 1190 (5th Cir. 1983).
[26] *Hines*, supra.
[27] "The court must then determine the extent to which these issues have already been raised and resolved, and the extent to which such issues are known to the court and the original parties. If the court finds that the issues have been resolved, or that the current parties are aware of and competent to represent the interests of the putative intervenors, denial of intervention is proper. On the other hand, if the court determines that the petitioner has a significant claim that it can best represent, intervention should be granted." *Id.*
[28] *Green v. Cty. Sch. Bd. of New Kent Cty., Va.*, 391 U.S. 430, 437-38, 88 S. Ct. 1689, 1694, 20 L. Ed. 2d 716 (1968).

## IV. Conclusion

Accordingly, pursuant to Rule 24, the Neville Alumni and Friends Association, Greg Jones, and Nici Hanks are entitled to intervene in this action as a matter of right in order to advocate their interests in a district partnership with the University of Louisiana at Monroe and to enforce continuing compliance with the Consent Decree on the part of the existing parties.

Respectfully submitted,

**BREITHAUPT, DUNN, DUBOS, SHAFTO & WOLLESON, LLC**
1811 Tower Drive, Suite D
P.O. Box 14106
Monroe, Louisiana 71207
Telephone: (318) 322-1202
Facsimile: (318) 322-1984
Email: swolleson@bddswlaw.com
         rwoodard@bddswlaw.com


BY: /s/P. Scott Wolleson.
      P. Scott Wolleson (#22691) (T.A.)
      Russell A. Woodard, Jr. (#34163)

## **CERTIFICATE OF SERVICE**

I hereby certify that a copy of the above and foregoing Plaintiffs' Memorandum in Support of Motion for Leave to Intervene has been served on all counsel of record by this Honorable Court's CM/ECF system.

Monroe, Louisiana, this 29th day of January, 2016.

*/s/ P. Scott Wolleson*
P. Scott Wolleson