UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | |
|---|---|
| **JIMMY ANDREWS, ET AL.** | **CIVIL ACTION NO. 65-11297** |
| **VERSUS** | **JUDGE ROBERT G. JAMES** |
| **CITY OF MONROE, ET AL.** | **MAG. JUDGE KAREN L. HAYES** |

**RULING**

Pending before the Court is a Motion for Leave to Intervene [Doc. No. 121] filed on

January 29, 2016, by the Neville Alumni and Friends Association ("NAFA") through its

executive board member, Dwayne Ludley ("Ludley"); Greg Jones ("Jones"), the parent of a

student at Neville High School; and Nici Hanks, the parent of two students, one of whom attends

school at Lee Junior High and one of whom attends school at Sallie Humble Elementary School.

The movants seek to intervene in the above-referenced matter under Federal Rule of Civil

Procedure 24(a)(2).  The Monroe City School Board ("School Board") and Plaintiff-Intervenor

the United States oppose movants' intervention.[1]

A hearing was held on April 4, 2016, and the Court is now ready to rule.

**I.     Background**

For almost 50 years, the School Board has operated the District under a desegregation

decree.  On August 5, 1965, a complaint was filed in the name of then-minor students, Jimmy

Andrews and Tommy Ray Robertson, by their mothers, against the City, the Mayor, the

---

[1]The individual Plaintiffs Annie Faye Harris and Benya Marshall did not actively
participate in the hearing.

members of the School Board, and the Superintendent.  On September 17, 1965, the Court

issued a permanent injunction prohibiting Defendants from operating a bi-racial school system.

On August 1, 1969, the Court issued a desegregation decree.  In this decree, the

Honorable Ben C. Dawkins, Jr., approved a modified desegregation plan proposed by the

School Board, which provided:

(1)     Following a zoning plan proposed by the Monroe City School Board;

(2)     Allowing any student in the majority race at his school to transfer to a school
        where he would be in the minority race;

(3)     Refusing students the opportunity to transfer from a school in the District to a
        school under the direction of the Ouachita Parish School Board;

(4)     Allowing the School Board to appoint a bi-racial advisory committee to assist in
        the desegregation of schools; and

(5)     Submitting a plan by February 1, 1970, to accomplish full integration or
        desegregation of the school system.

The August 1, 1969 decree was subsequently modified on November 4, 1969; February 11,

1970; February 24, 1970; July 30, 1970; July 30, 1971; January 27, 1972; August 16, 1973;

August 30, 1973; August 15, 1988; June 7, 1989; July 6, 1992; April 29, 1998; August 4,

1998; December 18, 2000; July 26, 2000; August 8, 2005; March 30, 2010; July 25, 2011;

June 20, 2012; September 25, 2015; and December 11, 2015.

On February 16, 1970, the United States Department of Justice ("DOJ") intervened as

amicus curiae.  On May 11, 1978, the Court granted DOJ's motion to formally intervene, and

DOJ has been active in the case since that time.

On July 6, 1992, the Court granted the School Board's motion for unitary status in part and declared the District unitary in the areas of facilities, extracurricular activities, and hiring and retention of teachers and administrators.  The Court denied the School Board's motion in part, finding that the District was not unitary in the areas of teacher and principal assignments, student assignments, and transportation.

On July 9, 1998, Plaintiffs Benya Marshall and Annie Faye Harris (collectively "Plaintiffs") were permitted to join the case as Plaintiffs.

On March 26, 2010, the School Board and the DOJ filed a proposed Consent Decree with the Court.  Plaintiffs did not object.  On March 30, 2010, the Court signed a Consent Order [Doc. No. 16], which again modified the August 1, 1969 Decree.  The Consent Order provided for specific actions to be taken by the School Board, culminating in a review of the District's unitary status at the end of June 2014.

On July 25, 2011, the Court issued an Order [Doc. No. 38] granting the School Board's Motion for Partial Relief from Judgment, again modifying the August 1, 1969 Decree, to provide for the reassignment of sixth grade students at Cypress Point Elementary School to Sallie Humble Elementary School for the 2011-2012 school year.  Additionally, the School Board was directed to "petition the Court to approve the School Board's proposed comprehensive attendance plan for implementation prior to the commencement of the 2012-2013 school year." *Id.*

Subsequently, the School Board retained a demographer who made re-zoning recommendations.  On May 25, 2012, the School Board filed a Motion for Partial Relief from Judgment based on these recommendations [Doc. No. 48].  The DOJ did not oppose the

proposed attendance zone plan, although Plaintiffs did oppose.  A hearing was held on June 18,

2012.  On June 20, 2012, the Court granted the Motion for Partial Relief from Judgment and

ordered, among other actions, that (1) Martin Luther King, Jr. Middle School be converted

from a 6th-8th grade school to a 7th-8th grade school; (2) Lexington Elementary School and

Sallie Humble Elementary School be merged into a single attendance zone with Lexington

serving as a lower elementary school and Sallie Humble serving as an upper elementary

school; and the boundaries for Cypress Point and Lincoln Elementary Schools be re-zoned.

Throughout this time, the Court continued to hold regular conferences with counsel to

address the status of the case, the pending Consent Decree set to be resolved in June 2014, and

any remaining desegregation issues.  At no time did either party raise any issues for the Court

to address.  The School Board did not seek unitary status,[2] but the DOJ specifically advised the

Court that it did not intend to take further action.

After review, the Court, acting *sua sponte*,  set a unitary status hearing to be held on

September 21, 2015.  Prior to the hearing, new counsel for DOJ enrolled and raised concerns

about the School Board's compliance with the five-year-old Consent Decree.  The hearing was

held on September 21-22, 2015.  During those two days, the Court heard testimony from

Superintendent Brent Vidrine; Transportation Manager Michael Felton, School Board members

Rodney McFarland and Brenda Shelling; Human Resources Director Phedra Brantley; Principal

Patrick Taylor of Carroll High School; Principal Whitney Martin of Neville High School;

Principal Tammie McDaniel of J.S. Clark Magnet Elementary School; Principal Toni McCarty of

---

[2]On multiple occasions, the School Board's counsel advised the Court that the School
Board did not wish to move for unitary status.

Lexington Elementary School; former School Board member Jessie Handy; and Plaintiffs Harris and Marshall.

On September 25, 2015, the Court issued its Ruling declaring that the District is unitary in the areas of transportation and student assignments, but finding that the District has not achieved unitary status in the area of principal and teacher assignments and has not fully complied with the March 30, 2010 Consent Order.  The Court ordered the School Board to remain under its supervision.

The Court further ordered that, by November 20, 2015, the parties submit a jointly proposed consent decree or a status report indicating that no agreement could be reached.  If no agreement was reached and if appropriate, the Court stated that it would hold another hearing on December 7, 2015.   Upon the parties' motion, the deadline was extended to December 11, 2015.

On December 10, 2016, the parties filed a Joint Motion for the Approval and Entry of the Proposed Consent Decree.  The Court granted the motion and signed the Consent Decree on December 11, 2016.  The parties now continue to work under the Consent Decree to address the unresolved issues from the previous consent decree and the remaining unitary status factor of principal and staff assignments.  As part of the Consent Decree, the School Board is required to and has retained an independent court monitor to provide periodic reports to the Court.  The Board selected Educational Planning Group ("EPG") to serve in this capacity.

On January 26, 2016, the Court granted the School Board's motion for a status conference.

On January 29, 2016, the movants filed the instant Motion for Leave to Intervene.  The School Board and DOJ filed opposition memoranda.  The movants filed a reply.

2

On February 1, 2016, the Court held a status conference with the School Board members and their counsel.  Plaintiff Harris was present to observe, and the DOJ participated by telephone. Although the Court listened to the concerns raised by School Board members, those concerns were not among the issues that are appropriately addressed in this forum or specifically related to the goals of desegregation.

A hearing on the Motion for Leave to Intervene was held on April 4, 2016, where the Court heard testimony from Jones, Dr. Brent Vidrine (the Superintendent), Brenda Shelling, Ludley, and Hanks.

The Court is now prepared to rule.

## II.     Law and Analysis

Rule 24(a)(2) imposes four requirements on an applicant who moves to intervene as a matter of right:

    (1)     Application for intervention is timely;

    (2)     Applicant has an interest relating to the property or transaction which is the subject of the action;

    (3)     Applicant must be so situated that the disposition of the action, may, as a practical matter, impair his or her ability to protect that interest; and

    (4)     Applicant's interest must be inadequately represented by the existing parties to the suit.

FED. R. CIV. P. 24(a)(2); *see also United States v. Franklin Par. Sch. Bd.*, 47 F.3d 755, 756 (5th Cir. 1995).  "In the absence of any of these elements, intervention as of right must be denied." *Graham v. Evangeline Par. Sch. Bd.*, 132 Fed. App'x. 507, 511 (5th Cir. 2005) (citing *Franklin Par.*, 47 F.3d at 758).

3

Timeliness is a "threshold question addressed to the sound discretion of the court." *Jones v. Caddo Par. Sch. Bd.*, 204 F.R.D. 97, 100 (W.D. La. 2001) (citing *NAACP v. New York*, 413 U.S. 345, 366 (1973); *Corley v. Jackson Police Dept.*, 755 F.2d 1207, 1209 (5th Cir. 1985)).

> Determining the timeliness of a motion to intervene entails consideration of four factors: (1) The length of time during which the would-be intervenor actually knew or reasonably should have known of its interest in the case before it petitioned for leave to intervene; (2) the extent of the prejudice that the existing parties to the litigation may suffer as a result of the would-be intervenor's failure to apply for intervention as soon as it knew or reasonably should have known of its interest in the case; (3) the extent of the prejudice that the would-be intervenor may suffer if intervention is denied; and (4) the existence of unusual circumstances militating either for or against a determination that the application is timely.

*Sierra Club v. Espy*, 18 F.3d 1202, 1205 (5th Cir. 1994) (citing *Stallworth v. Monsanto Co.*, 558 F.2d 257, 264–66 (5th Cir. 1977)).  The time for seeking to intervene does not run from the date the "would-be intervenor became aware of the pendency of the action"; rather, the "better gauge of promptness is the speed with which the would-be intervenor acted when it became aware that its interests would no longer be protected by the original parties." *Id.* (citing *Stallworth*, 558 F.2d at 264).

In addition to proving the timeliness of their intervention, "parents seeking to intervene (in desegregation cases) must demonstrate an interest in a desegregated school system." *United States v. Perry Cnty. Bd. of Educ.*, 567 F.2d 277, 279 (5th Cir. 1978).  Their interest must be "concrete, personalized, and legally protectable." *Texas v. United States*, 805 F.3d 653 (5th Cir. 2015).  That is, the proposed intervenor must have "a stake in the matter that goes beyond a generalized preference that the case come out a certain way.  So, an intervenor fails to show a sufficient interest when he seeks to intervene solely for ideological, economic, or precedential

4

reasons; that would-be intervenor merely prefers one outcome to the other." *Id.* at 657.

Finally, in meeting their burden of demonstrating inadequate representation, the movants need only "show that representation 'may be' inadequate." *Sierra Club*, 18 F.3d at 1207 (quoting *Trbovich v. United Mine Workers*, 404 U.S. 528, 538 n. 10 (1972)). Although this burden is minimal, "[w]hen the 'party seeking to intervene has the same ultimate objective as a party to the suit, the existing party is presumed to adequately represent the party seeking to intervene unless that party demonstrates adversity of interest, collusion, or nonfeasance.'" *Franklin Par. Sch. Bd.*, 47 F.3d at 757-58 (quoting *Kneeland v. Nat'l Collegiate Athletic Ass'n*, 806 F.2d 1285, 1288 (5th Cir. 1987)).

Having reviewed the case law and considered the evidence presented at the April 4, 2016 hearing, the Court agrees with the School Board and the United States that the proposed intervenors did not timely move to intervene, have not stated legally cognizable interests, and have not demonstrated that their interests are inadequately represented.

First, the Court finds that the proposed intervention is not timely. This case has been pending since 1965, and the School District has achieved unitary status in every area except one. The only unresolved issues before the Court are the District's failure to comply with the March 2010 Consent Decree (which has since been modified) and the one remaining *Green* factor of principal and teacher assignments. Testimony indicated that the movants have been aware that the School District operates under a desegregation decree well before the filing in this case. Specifically, Hanks testified that she has been aware of the desegregation decree before the consolidation of Sallie Humble and Lexington Elementary Schools which took place in 2012. Jones testified that he has been aware of the desegregation decree since last year. The movants

5

were also aware of the Court's September 2015 hearing and September 25, 2015 Memorandum

Ruling and Order [Doc. Nos. 106 & 107], but failed to take action until after the current Consent

Decree was signed by the Court.  Indeed, the movants admit that their impetus was the selection

of EPG as court monitor, months after they were aware of the unresolved issues in this case.[3]

The other factors of prejudice to the existing parties, prejudice to the would-be

intervenors, and the existence of unusual circumstances also weigh against a finding of

timeliness.  This case is not unusual in the context of desegregation law.  This Court has presided

over a number of longstanding desegregation cases and brought them to resolution over the past

few years.  In many cases, the members of the school boards are not in agreement about the

proper courses of action to take to resolve the case because of the conflicting interests of their

constituents.  Although it is clear to the Court, the parties, counsel, and the public at large that

this School Board is particularly contentious, they have been able to reach agreement with the

DOJ on proposals and the individual Plaintiffs have also had the opportunity to provide input if

they wish.  At this late date, intervention of the movants would prejudice the ability of the

existing parties to reach final agreement.  The movants, while unhappy with the decision of the

School Board, are represented, and, as Hanks noted, at least three of the members speak to their

interests.

Second, even if the movants timely moved to intervene based solely on the problems

_____

[3]The movants presented evidence of the controversy and issues surrounding the selection of EPG.  However, the Court has found that evidence is irrelevant to the determination before it, other than as motivation for the movants' filing of the Motion to Intervene.  The School Board's selection of a monitor with ties to Shelling and its alleged overpayment to that monitor are not issues of desegregation and are not proper matters for the Court's involvement unless or until these matters affect the ability of the School Board to bear the costs related to the final resolution of this desegregation case.

arising from the selection of EPG, they cannot establish that they have a legally protectable interest.   The testimony from Jones, Ludley, and Hanks demonstrates that their concerns are targeted at the educational experience provided to students at Neville High School, and, in the case of Hanks, at elementary and middle school feeder schools for Neville.  While the witnesses were careful to ensure the Court that they only wished to assist in bringing the desegregation case to a close, under cross examination, it was clear that their focus was not on desegregation, but on the schools with which they are associated.  Jones and Hanks, whose children are students in the District, expressed their satisfaction with their schools and a desire that the teachers and experiences they have had in the system remain the same.  In other words, they do not want the principals or teachers reassigned to other schools in the District, regardless of whether such reassignment furthers desegregation.[4]  Ludley, who does not have a child in the District, but serves as an officer of NAFA, also attempted to convey his interest in all the schools in the District, but, when pressed, could not identify knowledge about the other high schools or identify any actions NAFA had taken District-wide.[5]

While the Court is sympathetic to the concerns of those citizens and parents who desire that Neville and its feeder schools continue to provide a sound education to its students, the Fifth

---

[4]The Court does not doubt the sincerity of movants' concerns about EPG, but their testimony indicated that they want this case to be resolved without any change to the status quo as far as teacher and principal assignments, which is the one area left to be desegregated.  *See Davis v. East Baton Rouge Parish Sch. Bd.*, 721 F.2d 1425, 1441 (5th Cir. 1985) ("Here, as in several of our previous cases, 'the parents are not seeking to challenge deficiencies in the implementation of desegregation orders.'  They oppose such implementation.") (quoting *Pate v. Dade Cnty. Sch. Bd.*, 588 F.2d 501, 503 (5th Cir. 1979) (other citations omitted)).

[5]Hanks testified about NAFA's provision of funds for the Rachel's Challenge program to come to the District for the benefit of all the schools, but when Ludley was asked about this same issue, he could not provide any testimony on it.

7

Circuit has consistently held that the interest in a particular neighborhood school does not constitute a legally cognizable "interest" for purposes of Rule 24(a)(2) when there are no attendant effects on desegregation.  *See generally Graham,* 132 Fed. Appx. at 512 (Affirming the district court's holding that an "'interest in maintaining local community schools, without a showing that consolidation would hamper the avowed goal of eliminating the vestiges of past discrimination, fails to constitute a legally cognizable interest in a school desegregation case.'"); *Perry Cty.*, 567 F.2d 277 at 279-80 (Parent group failed to identify a legally cognizable interest under Rule 24(a)(2) regarding the re-construction of a school on the basis of safety and welfare of school children, a large attendance zone that would require considerable travel on the part of some students, and the significant outlay of public funds that would be required).  At the end of the day, NAFA, Ludley, Jones, and Hanks are concerned about their school(s) and their students, not about District-wide desegregation and specifically about ensuring that the assignment of principals and teachers is addressed in a way that furthers the goals of desegregation.

Third, even if movants could show a legally cognizable interest in their concerns, as Hanks admitted, their interests are adequately represented by the same School Board members who supported their motion by filing declarations: Bill Willson, Jennifer Haneline, and Vickie Dayton.  Those School Board members have the right to request information and to notify the School Board's counsel of any wrongdoing.  Indeed, they have done so.  The Court's February 1, 2016 meeting with the School Board members was set to discuss their concerns.

Finally, the Court reiterates that its role in this case is limited to ensuring that the School Board has taken all steps practicable to eliminate the vestiges of discrimination remaining from

the prior *de jure* system.[6]  To that extent, the movants can look both to the United States and the

Court itself for the protection of the legal interest.[7]  The Court understands the movants'

frustration, but the Court has been clear that it intends to finally resolve this case and that it is

willing to *sua sponte* convene a hearing and bring necessary witnesses to achieve resolution.

Contrary to movants' arguments, the Court does not believe that permitting their intervention

will resolve this case more quickly.  If the movants have valid concerns about the process, they

are not without recourse; they may notify the Court by filing a motion for leave to file an amicus

curiae brief.

## II.     Conclusion

For the foregoing reasons, movants' Motion for Leave to Intervene [Doc. No. 121] is

DENIED.

MONROE, LOUISIANA, this 12th day of April, 2011.


**ROBERT G. JAMES**
**UNITED STATES DISTRICT JUDGE**

---

[6]District courts may "relinquish supervision under a desegregation decree if 'the vestiges of discrimination [have] been eliminated to the extent practicable.'"  *Hull v. Quitman Cty. Bd. of Educ.*, 1 F.3d 1450, 1454 (5th Cir. 1993) (quoting *Board of Educ. of Okla. City v. Dowell*, 498 U.S. 237, 249 (1991)).

[7]The movants have pointed to the demographics of the District as evidence that the schools have been fully desegregated, but the Court does not have the luxury of relying on demographics alone to determine that the District has achieved full unitary status.  Indeed, the Court has determined that the District *is unitary* in every factor, including student assignments, except that of principal and teacher assignments.